# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION
## CIVIL NO. 5:06CV68-C

| | | |
|---|---|---|
| VARNELL STRUCK & ASSOCIATES, INC., | ) ) ) | |
| Plaintiff, | ) ) | **MEMORANDUM AND RECOMMENDATION AND ORDER** |
| vs. | ) ) | |
| LOWE'S COMPANIES, INC., | ) ) | |
| Defendant. | ) ) ) | |

**THIS MATTER** is before the Court on the Defendant's "Motion to Dismiss" (document # 18) and "Memorandum in Support ..." (document #190, both filed November 14, 2006; and the Plaintiff's "Motion to Strike" (document #26) and "Response to Motion to Dismiss" (document #27), both filed December 14, 2006.

On January 8, 2007, the Defendant filed its "Reply Memorandum in Support of Motion to Dismiss" (document #30), but has not responded to or otherwise opposed the Plaintiff's Motion to Strike, and the time for filing a response has expired.

This matter was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B), and these Motions are now ripe for the Court's consideration.

Having fully considered the arguments, the record, and the applicable authority, the undersigned will <u>grant</u> the Plaintiffs' Motion to Strike and will respectfully recommend that the Defendant's Motion to Dismiss be <u>granted</u>, as discussed below.

# I. PROCEDURAL AND FACTUAL BACKGROUND

This action arises from the termination of two written contracts and an alleged oral contract between the Plaintiff Varnell Struck & Associates, Inc., a Georgia corporation., and Defendant Lowe's Companies, Inc., a North Carolina corporation headquartered in Mooresville, Iredell County, North Carolina.

At the outset, and as discussed below, in resolving the Defendant's Motion to Dismiss, the Court is limited to considering the factual allegations contained in the Complaint, which are taken as true at this point in the proceedings. The Plaintiff has moved to strike certain additional facts which the Defendant alleged in its Memorandum in Support.[1]  Because these facts, which have no bearing on the merit of the Defendant's dispositive motion in any event, were not alleged or otherwise raised in the Complaint, and because the Defendant does not oppose the Plaintiff's Motion to Strike, that Motion will be granted and the Court has not considered those alleged facts.

Taking the Complaint as entirely true, the Defendant is a national home improvement retailer with nearly 150,000 full-time employees and a market capitalization of nearly $50 billion. Although considerably smaller, the Plaintiff is also a substantial business, which in 2004-2005, when the events allegedly giving rise to its claims occurred, had 900 employees in 48 states, annual revenue of more than $40 million, and a market value of $50 million.

Sometime in 1995, the parties entered into a contract whereby the Plaintiff provided "in-store merchandising services" for the Defendant,  that is, in layman's terms, the Plaintiff managed the

---

[1]These factual assertions are contained in the following portions of the Defendant's Memorandum in Support: the entirety of the first paragraph and the first two sentences of the second paragraph in the section entitled "Background," pp.1-2; the entirety of the section entitled "Additional Background," pp. 6-7; the entirety of the first paragraph of the section entitled "Argument," p. 9; and footnote 10, p. 17.

presentation and display of certain types of products within the Defendant's stores. Initially, the Plaintiff provided these services for lighting and ceiling fan products ("Fashion Lighting"), and later for an expanded array of products, including building materials products ("BMS"). The Plaintiff provided these services pursuant to a series of written contracts, each of which contained a clear termination clause allowing the Defendant to terminate the contract upon 60 days written notice to the Plaintiff.

Relevant to the subject Motion to Dismiss, in 2002, the Plaintiff's business with the Defendant accounted for 70% of the Plaintiff's gross revenue. In November 2002, after learning that Home Depot (the Defendant's chief competitor that the Plaintiff concedes is nearly twice the size of the Defendant) had attempted unsuccessfully to purchase the Plaintiff, the Defendant requested and the Plaintiff agreed that all future contracts between them would contain an exclusive dealings clause, that is, that the Plaintiff would no longer work for Home Depot or any other of the Defendant's competitors in the home improvement or hardware markets.[2]

On February 1, 2003, the parties entered into a written contract regarding the BMS products which contained the 60-day termination clause and the exclusive dealings clause ("the BMS contract").

Similarly, in August 2004, the parties entered into a written contract covering Fashion Lighting and Home Automation products that had an express term of one year and also contained the 60-day termination and exclusive dealings clauses ("the Fashion Lighting contract").

Sometime in early 2005, the Defendant solicited bids from the Plaintiff and other of the

---

[2]Although the Plaintiff makes much of the opportunity it allegedly had to be bought by or otherwise continue to do business with Home Depot, there is no indication in the record that the Defendant in any way influenced the Plaintiff's decision to decline Home Depot's purchase offer.

Plaintiff's competitors for the BMS business. The Plaintiff admits that it submitted its bid without objection, that is, without complaining that the Defendant was bound to continue its relationship with the Plaintiff regardless of other, lower bids.

On March 22, 2005, the Defendant terminated the BMS contract with the Plaintiff and awarded the BMS business to DDP Holdings, Inc. The Plaintiff alleges that a Lowe's "executive," R.S. Earp, Jr., "influenced" the Defendant's decision to award the BMS contract to DDP because his son was employed by DDP; that after DDP won the BMS account, it placed Mr. Earp's son "in charge" of the BMS account; and that "upon information and belief," Mr. Earp "directly received other consideration" from DDP as "inducements" to award the contract to DDP.

The Plaintiff further alleges that another Lowe's executive, Ron Lutz, promised that in compensation for losing the BMS account, the Defendant would continue to award other work to the Plaintiff, specifically the Fashion Lighting business, and that the Plaintiff justifiably relied on this promise and retained personnel that it otherwise would not have retained after losing the BMS contract and also cooperated in the transition to DDP taking on the BMS business.

It is undisputed that in July 2005 the Defendant solicited bids on the Fashion Lighting business, subsequently awarded that account to National Product Services, and terminated the Fashion Lighting contract with the Plaintiff.

The Plaintiff alleges that as a result of losing the BMS and Fashion Lighting contracts, it was "destroyed" and its stock rendered "worthless."

On June 2, 2006, the Plaintiff filed its Complaint, alleging eight state law claims and seeking compensatory damages in excess of $75,000, plus punitive damages, treble damages, and attorneys' fees. The first three claims, breach of the BMS contract (Count I), breach of the Fashion Lighting

4

contract (Count II), and breach of the oral contract created by Mr. Lutz's alleged promises that the Plaintiff would keep the Fashion Lighting business (Count III), are <u>not</u> the subject of the Defendant's Motion to Dismiss.

On November 14, 2006, the Defendant moved to dismiss the Plaintiff's remaining claims, that is, claims that the exclusive dealings clause in the contracts (Count IV) and the Defendant's decision to cancel the BMS contract after Mr. Earp's accepted "commercial bribes" (Count V) amounted to unfair and deceptive trade practices, that Mr. Lutz's alleged oral promises were negligent misrepresentations (Count VII), and that the Defendant's behavior as a whole amounted to tortious interference with contract (Count VI) and fraud (Count VIII).

In its Response, the Plaintiff expressly concedes that its tortious interference claim (Count VI) should be <u>dismissed</u>. <u>See</u> Document #27 at 9. Accordingly, the undersigned will respectfully recommend that the Defendant's Motion to Dismiss be <u>granted</u> as to that claim.

Concerning the Plaintiff's remaining claims, the Defendant's Motion to Dismiss has been fully briefed and is, therefore, ripe for disposition.

## II. <u>DISCUSSION OF CLAIMS</u>

### A. <u>Standard of Review</u>

"A motion to dismiss under [Fed. R. Civ. P. 12(b)(6)] tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." <u>Republican Party of North Carolina v. Martin</u>, 980 F.2d 943, 952 (4th Cir.), <u>cert. denied</u>, 510 U.S. 828 (1993), <u>citing</u> 5A C. Wright & A. Miller, <u>Fed. Practice and Procedure</u> §1356 (1990).

"A motion to dismiss for failure to state a claim should not be granted unless it appears to a certainty that the plaintiff would be entitled to no relief under any state of facts which could be proved in support of [the subject] claim." McNair v. Lend Lease Trucks, Inc., 95 F.3d 325, 328 (4th Cir. 1996)(en banc), citing Rogers v. Jefferson-Pilot Life Ins. Co., 883 F.2d 324, 325 (4th Cir. 1989); and Johnson v. Mueller, 415 F.2d 354, 355 (4th Cir. 1969). Accord Republican Party of NC, 980 F.2d at 952 ("A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief")(internal citation omitted).

In considering a Rule 12(b)(6) motion, the complaint must be construed in the light most favorable to the nonmoving party, assuming factual allegations to be true. See, e.g., Hishon v. King & Spaulding, 467 U.S. 69, 73 (1984); Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993); Martin Marietta v. Int'l Tel. Satellite, 991 F.2d 94, 97 (4th Cir. 1992); and Revene v. Charles County Comm'rs, 882 F.2d 870, 872 (4th Cir. 1989).

## B. Claims for Unfair and Deceptive Trade Practices

### 1. Exclusive Dealings Contracts (Count IV)

To establish a claim for unfair and deceptive trade practices under North Carolina's Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. § 75-1.1, ("UDTPA"),[3] a plaintiff generally must prove that "(1) defendants committed an unfair or deceptive act or practice;  (2) in or affecting commerce;  and (3) that plaintiff was injured thereby."  First Atlantic Management Corporation v.

---

[3]N. C. Gen. Stat. § 75-1.1(a)  provides that "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are declared unlawful."

Dunlea Realty Co., 131 N.C. App. 242, 252, 507 S.E.2d 56, 63 (1998), citing Canady v. Mann, 107 N.C.App. 252, 260, 419 S.E.2d 597, 602 (1992).

As an initial matter, the undersigned notes that as the Fourth Circuit Court of Appeals has recently stated, the UDTPA is intended to prohibit "conduct [that is] inherently unfair, unscrupulous, and injurious to consumers." ABT Building Products v. National Union Fire Ins. Co. Of Pittsburgh, ___ F. 3d ___, ___ (December 19, 2006) (where plaintiff business was "consumer" of insurance policy issued by defendant, whose conduct otherwise amounted to violation of North Carolina's Insurance Unfair Trade Practices Act, N.C. Gen. Stat. § 58-63-1, said conduct also amounted to violation of UDTPA) (emphasis added).

Moreover, it is well-settled in North Carolina that a "mere breach of contract does not constitute an unfair or deceptive trade practice." Horack v. Southern Real Estate Co. of Charlotte, Inc., 150 N.C. App. 305, 310, 563 S.E.2d 47, 51 (2002), citing Mosley & Mosley Builders v. Landin Ltd., 97 N.C.App. 511, 518, 389 S.E.2d 576, 580 (1990). Accord Branch Banking and Trust Co. v. Thompson, 107 N.C.App. 53, 62, 418 S.E.2d 694, 700 (1992); Sara Lee Corp. v. Quality Manufacturing, Inc., 201 F. Supp. 2d 608, 617 (M.D.N.C. 2002) (where defendant allegedly had "superior position" and "dictat[ed] terms" to plaintiff, and deliberately concealed that it was building its own shirt factory pursuant to a plan to terminate plaintiff's contract to produce the same products, court refused to allow unfair and deceptive trade practices claim); and Speedway Promoters, Inc. v. Hooter's of America, Inc., 123 F. Supp.2d 956, 965 (W.D.N.C. 2000) (large corporation's alleged heavy-handed, intentional breaches of contract with a small business were not sufficient to constitute "substantial aggravating circumstances" and "amount[ed] to run-of-the-mill breach of contract").

In context of exclusive dealings contracts, courts considering the issue have held that where

such agreements did not violate otherwise federal anti-trust laws, they necessarily were not "unfair and deceptive" within the meaning of a state's unfair and deceptive trade practices statute.  See, e.g., Chuck's Feed & Seed Co., v. Ralston Purina Co., 810 F.2d 1289, 1294 n. 2 (4th Cir. 1987) (exclusive dealings contract that did not violate federal prohibition on "vertical trade restrictions" necessarily did not violate South Carolina Unfair Trade Practices Act); and Stearns v. Genrad, Inc., 564 F. Supp. 1309, 1318 (M.D.N.C. 1983) (exclusive dealings contract did not violate Sherman Act, and, therefore, did not violate UDTPA), aff'd 752 F.2d 942 (4th Cir. 1984).

Finally, although "the occurrence of the alleged conduct, damages and proximate cause are fact questions for the jury ... whether such conduct [falls within the UDTPA] is a legal issue for the court." ABT Building Products , __ F. 3d at ___,  citing S. Atl. Ltd. P'ship of Tenn., L.P. v. Riese, 284 F.3d 518, 534 (4th Cir. 2002).

Applying these legal principles to the allegations of the Complaint taken as true for these purposes, the Plaintiff has failed to allege a viable UDTPA claim via a vis the exclusive dealings clauses contained in the parties' contracts. Indeed, the Plaintiff expressly concedes that the subject exclusive dealings clauses did not violate federal anti-trust statutes, or otherwise harm consumers or effect competition in the marketplace.  See "Response ..." at 2 (document #27).

Rather, the Plaintiff contends that the Defendant's conduct was "unfair and deceptive" within the meaning of the UDTPA because it used its unequal bargaining position to force the Plaintiff to accept the clauses, conduct that even if true will not support a UDTPA claim.  Accord  Quality Manufacturing, Inc., 201 F. Supp. 2d at 617 (where defendant allegedly had "superior position" and "dictat[ed] terms" to plaintiff, and deliberately concealed that it was building its own shirt factory pursuant to a plan to terminate plaintiff's contract to produce the same products, court refused to

allow unfair and deceptive trade practices claim); and Speedway Promoters, Inc., 123 F. Supp.2d at 965 (large corporation's alleged heavy-handed, intentional breaches of contract with a small business were not sufficient to constitute "substantial aggravating circumstances" and "amount[ed] to run-of-the-mill breach of contract"). Accordingly, the undersigned will respectfully recommend that the Plaintiff's UDTPA claim arising from the exclusive dealings clauses (Count IV) be dismissed.

## 2. "Commercial Bribery" (Count V)

The Plaintiff also contends that the Defendant committed an unfair and deceptive trade practice because its decision to terminate the BMS contract and award that account to DDP was allegedly influenced by DDP offering the Defendant's employee, Mr. Earp, a "commercial bribe" in violation of N.C. Gen. Stat. § 14-353.[4]

The North Carolina Court of Appeals has held that the perpetrators of a criminal commercial bribery scheme, that is, the payor of the bribe and the employee/agent who accepts it, may also be held liable civilly to the employer under the UDTPA. Kewaunee Scientific Corp., v. Pegram, 130 N.C. App. 576, 58-81, 503 S.E. 2d 417, 419-20 (1998). The Plaintiff has not cited any authority, however, and the undersigned is aware of none, considering whether, much less holding, that the victim of a commercial bribery scheme, that is, the employer, may also be held liable under the

---

[4] N.C. Gen. Stat. § 14-353 provides in relevant part:

Any person who gives, offers or promises to an agent, employee or servant any gift or gratuity whatever with intent to influence his action in relation to his principal's, employer's or master's business; any agent, employee or servant who requests or accepts a gift or gratuity or a promise to make a gift or to do an act beneficial to himself, under an agreement or with an understanding that he shall act in any particular manner in relation to his principal's, employer's or master's business; ... shall be guilty of a Class 2 misdemeanor.

UDTPA to a third party who claims it was also injured by the criminal conduct.    Accordingly, and because the conduct the Defendant complains of – the cancellation of the BMS contract – otherwise amounted to, at most, a breach of contract, the undersigned will respectfully recommend that the Plaintiff's second UDTPA claim (Count V) be <u>dismissed</u> as well.

### C.  <u>Negligent Misrepresentation (Count VII) and Fraud (Count VIII)</u>

It is well settled that in order to state a viable claim in tort, such as for fraud or negligent misrepresentation, arising from conduct that is alleged to have also breached a contract, "a plaintiff must allege a duty owed him by the defendant separate and distinct from any duty owed under [the] contract." <u>Vanwyk Textile Sys., B.V. v. Zimmer Mach. Am., Inc.</u>, 994 F.Supp. 350, 362 (W.D.N.C.1997).  <u>Accord</u> <u>Broussard v. Meineke Disc. Muffler Shops, Inc.</u>, 155 F.3d 331, 348 (4th Cir. 1998) (under North Carolina law, "parties to a contract do not ... become each others' fiduciaries; they generally owe no special duty to one another beyond the terms of the contract"), <u>citing</u> <u>Branch Banking and Trust Co. v. Thompson</u>, 107 N.C. App. 53, 418 S.E. 2d 694 (1992); <u>and</u> <u>Quality Manufacturing, Inc.</u>, 201 F. Supp. 2d at 616 (where plaintiff failed to establish that a fiduciary relationship existed between it and the defendant, despite allegations of breach of contract, claim for constructive fraud failed).[5]

Accepting the allegations of the Complaint as entirely true, the Plaintiff has not alleged that the Defendant owed it <u>any</u> duty, fiduciary or otherwise, other than the duties arising from the parties'

---

[5]Although recognizing that unpublished decisions have no precedential value, the undersigned notes that Senior District Judge Graham C. Mullen recently dismissed a defendant's counterclaims for fraud and negligent misrepresentation where the defendant alleged, at most, that the plaintiff "misrepresented ... [and] fraudulently concealed the nature of the charges on its invoices ... deceiv[ing the defendant] into paying charges that were not owed," and had failed to allege the requisite "duty ... distinct from any duty owed under a contract."   <u>US LEC Communications, Inc., v. Qwest Communications Corp.</u>, 2006 WL 1367383 at 2 (W.D.N.C. 2006).

contractual relationship. In other words, despite the Plaintiff's clear desire to assert negligent misrepresentation and fraud claims separate from its breach of contract claims, it is clear that the factual predicate for its tort claims is the selfsame breach of the parties' written contracts and the alleged oral contract. Accordingly, the undersigned will respectfully recommend that the Defendant's Motion to Dismiss also be <u>granted</u> as to the Plaintiff's remaining tort claims for fraud and negligent misrepresentation.

### III. <u>ORDER</u>

**IT IS HEREBY ORDERED** that the Plaintiff's "Motion to Strike" (document #26) is **GRANTED**, and the factual allegations contained in the Defendant's "Memorandum in Support" (document #19), footnoted above, which were addressed in that Motion are **STRICKEN** and the Court has not considered them in making its recommendation on the Defendant's Motion to Dismiss, below.

### IV. <u>RECOMMENDATION</u>

**FOR THE FOREGOING REASONS,** the undersigned respectfully recommends that the Defendant's "Motion to Dismiss" (document # 18) be **GRANTED**, that is, that the Plaintiff's claims for unfair and deceptive trade practices (Counts IV and V), tortious interference with contract (Count VI), negligent misrepresentation (Count VII), and fraud (Count VIII) be **DISMISSED WITH PREJUDICE**.

### V. <u>NOTICE OF APPEAL RIGHTS</u>

The parties are hereby advised that, pursuant to 28 U.S.C. §636(b)(1)(c), written objections

to the proposed findings of fact and conclusions of law and the recommendation contained in this Memorandum must be filed within ten (10) days after service of same. Page v. Lee, 337 F.3d 411, 416 n.3 (4th Cir. 2003); Snyder v. Ridenour, 889 F.2d 1363, 1365 (4th Cir. 1989); United States v. Rice, 741 F. Supp. 101, 102 (W.D.N.C. 1990). Failure to file objections to this Memorandum with the district court constitutes a waiver of the right to de novo review by the district court. Diamond v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005); Wells v. Shriners Hosp., 109 F.3d 198, 201 (4th Cir. 1997); Snyder, 889 F.2d at 1365. Moreover, failure to file timely objections will also preclude the parties from raising such objections on appeal. Diamond, 416 F.3d at 316; Wells, 109 F.3d at 201; Page, 337 F.3d at 416 n.3; Thomas v. Arn, 474 U.S. 140, 147 (1985); Wright v. Collins, 766 F.2d 841, 845-46 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

The Clerk is directed to send copies of this Memorandum and Recommendation and Order to counsel for the parties; and to the Honorable Robert J. Conrad, Jr.

**SO ORDERED AND RECOMMENDED.**

Signed: January 10, 2007

Carl Horn, III
United States Magistrate Judge

12