# IN THE DISTRICT COURT OF THE UNITED STATES
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### STATESVILLE DIVISION

## CIVIL CASE NO. 5:06cv068

| | | |
|---|---|---|
| **VARNELL, STRUCK & ASSOCIATES, INC.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **O R D E R** |
| | ) | |
| **LOWE'S COMPANIES, INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| _____ | ) | |

**THIS MATTER** is before the Court on the Defendant's Motion to Dismiss [Doc. 18] and the Plaintiff's Objections [Doc. 35] to the Memorandum and Recommendation [Doc. 31] of Magistrate Judge Carl Horn, III. Pursuant to 28 U.S.C. § 636(b) and the standing Orders of Designation of this Court, the Court referred the Defendant's Motion to Dismiss [Doc. 18] to the Magistrate Judge for a recommendation as to disposition of this motion. Having conducted a *de novo* review of those portions of the recommendation to which specific objections were filed, and for the reasons set forth below, the Court hereby adopts portions of the

Magistrate Judge's Memorandum and Recommendation [Doc. 31] but rejects other portions thereof. Accordingly, the Defendant's Motion to Dismiss [Doc. 18] is **GRANTED** as to Counts IV and VI of the Plaintiff's Complaint [Doc. 2], and those Counts are hereby **DISMISSED**. As to Counts V, VII, and VII of the Complaint [Doc. 2], the Motion to Dismiss [Doc. 18] is **DENIED**.

## I.    FACTUAL BACKGROUND

This diversity action arises from the circumstances surrounding the termination of two written contracts and an alleged oral contract between the Plaintiff Varnell Struck & Associates, Inc., a Georgia corporation, and the Defendant Lowe's Companies, Inc., a North Carolina corporation headquartered in Mooresville, North Carolina.

Taking the allegations as set forth in the Plaintiff's Complaint as true, the following are the facts. The Defendant is a national home improvement retailer with 144,000 full-time employees and a market capitalization in excess of $48 billion. [Complaint, Doc. 2 at ¶¶ 12, 13]. The Plaintiff is a considerably smaller business; during the time when the events giving rise to this civil action occurred, the Plaintiff had nearly 900 employees in 48 states and a market value of $50 million. [Id. at ¶ 55, 58].

The Plaintiff's original business was that of an outside sales representative for manufacturers of home improvement and hardware products, including assisting customers in designing, setting up and maintaining in-store displays in home improvement retailers. [Id. at ¶¶ 25-27]. In 1989, the Plaintiff began doing work for manufacturers in the Defendant's stores. [Id. at ¶ 29]. In 1995, the Plaintiff and the Defendant entered into an agreement to implement a multi-vendor service program, which consolidated and serviced the in-store merchandising requirements of over 45 manufacturers who provided the Defendant with fashion lighting and ceiling fan products (collectively "fashion lighting"). [Id. at ¶¶ 30-31]. In 2000, the Plaintiff developed a similar program for the Defendant's home automation, exterior lighting, and utility lighting product groups (collectively "home automation"). [Id. at ¶ 34]. In March 2002, the Plaintiff created and implemented a similar in-store merchandising program for the Defendant's building materials products ("BMS"). [Id. at ¶ 37]. At the Defendant's request, the Plaintiff built a $2.1 million 33,500 square foot facility in Mooresville, North Carolina and invested millions of additional dollars in infrastructure in order to support its business with the Defendant. [Id. at ¶¶ 40, 41].

By 2002, the Plaintiff's work with the Defendant accounted for approximately 70% of the Plaintiff's revenues, although Plaintiff's business with Home Depot was growing.  [Id. at ¶¶ 43-44].  In the summer of 2002, Home Depot offered to purchase the Plaintiff so that the Plaintiff would become Home Depot's in-house merchandising division.  [Id. at ¶ 45].  The Plaintiff declined the offer.  [Id. at ¶ 46].  When the Defendant learned of Home Depot's offer, the Defendant told the Plaintiff that it would no longer permit the Plaintiff to work in Home Depot stores and that the Plaintiff would have to sign exclusivity agreements with the Defendant in order to continue their business relationships.  [Id. at ¶ 47].  The exclusive dealing clause provided, in pertinent part, that the Plaintiff would not provide services to any of the Defendant's competitors without the Defendant's prior written permission.  [Id. at ¶ 50].  The Defendant gave no new consideration for the exclusive dealing arrangement it required of the Plaintiff.  [Id. at ¶ 49].

By early 2005, the Plaintiff's business was substantially dedicated to in-store merchandising for the Defendant, and the Plaintiff's annual revenue had increased to $42 million.  [Id. at ¶ 55].

In early 2005, the Defendant solicited proposals for in-store merchandising services for its lumber products and BMS business. [Id. at ¶ 59]. After completing the bidding process, the Defendant notified the Plaintiff that it was terminating the Plaintiff's BMS contract and awarded the BMS business to DDP Holdings, Inc. ("DDP"), a competitor of the Plaintiff. [Id. at ¶ 60]. Having accounted for $13.7 million of the Plaintiff's 2004 revenues, the loss of the BMS business devastated the Plaintiff financially. [Id. at ¶¶ 69-70].

The Complaint alleges that one of the Defendant's executives, R.S. Earp, Jr. influenced the Defendant's decision to pull the BMS business from the Plaintiff and award it to DDP. Earp's son was an employee at DDP, and when DDP received the Defendant's lumber and BMS business, it placed Earp's son in charge of those product lines. The Complaint further alleges that Earp received other consideration and inducements from a DDP executive in order to use his influence to send the Defendant's business to DDP, and that Earp's conduct in this regard violated the North Carolina commercial bribery statute, N.C. Gen. Stat. § 14-353. [Id. at ¶ 62-66].

In March 2005, the Defendant advised the Plaintiff that it wanted the Plaintiff to transition its BMS employees to DDP so that DDP could assume responsibility for the building materials department.  [Id. at ¶ 68].  In late March, 2005, one of the Defendant's executives, Ron Lutz, told the Plaintiff's principal, David Struck, in a telephone conversation that the Defendant was merely "realigning things" and that "Lowe's had already decided that [Plaintiff's] growth area would be fashion products," such as fashion lighting, fashion plumbing, and flooring.  [Id. at ¶ 73].  Lutz also told Struck that the Defendant viewed the Plaintiff as "a long term partner" and that it was in the Plaintiff's "future interest to cooperate in the transfer of the BMS business to DDP so that there would be no disruption to Lowe's operations."  [Id.].

On April 15, 2005, in a meeting about the transition of the BMS business to DDP, Lutz told Struck that the Plaintiff "should continue to be a good partner because it would be on the receiving end of one of these transition meetings in the near future."  [Id. at ¶ 74].

At a meeting in the Plaintiff's Mooresville office during the second or third week of June 2005, Lutz told Struck that the Defendant had determined that the Plaintiff's "expertise was in the fashion products area

and that no service group currently working at Lowe's did the job as well." [Id. at ¶ 75]. Lutz again told Struck "that fashion products was where the Plaintiff's future growth would occur," and that the Plaintiff "would more than make up for what it was losing in the BMS business." [Id.]. Lutz further assured Struck that this was merely a temporary setback, and that the Plaintiff "should view this change as 'taking one step backward to take two steps forward.'" [Id.].

In reliance upon Defendant's representations, Plaintiff cooperated in transitioning the BMS work to DDP, including surrendering nearly one-third of its workforce to DDP so that DDP could staff the BMS work. [Id. at ¶¶ 79-80]. The Defendant, however, had not decided to give the Plaintiff additional work in fashion products to replace the BMS business and instead made these representations in order to obtain the Plaintiff's acquiescence to the transfer of the BMS business to DDP. [Id. at ¶¶ 76-77].

In June, 2005, after the transition of the BMS business to DDP, the Defendant issued a request for proposal for the fashion lighting business it had earlier promised to the Plaintiff. [Id. at ¶ 83]. In September 2005, the Defendant pulled the fashion lighting and home automation work from the

Plaintiff and awarded it to one of the Plaintiff's competitors, NPS. [Id. at ¶ 88]. As a result, the Plaintiff ceased operations on September 30, 2005. [Id. at ¶ 92].

On June 2, 2006, the Plaintiff initiated this action, asserting three breach of contract claims (Counts I-III) against the Defendant, arising out of the allegedly wrongful termination of the BMS, fashion lighting, and home automation contracts, as well as the breach of the Defendant's promise to provide the Plaintiff additional fashion products business after the transfer of the BMS business to DDP. [Complaint, Doc. 2 at 14-23]. In addition to these breach of contract claims, the Plaintiff asserts three claims under the North Carolina Unfair and Deceptive Trade Practices Act ("UDTPA"), N.C. Gen. Stat. § 75-1.1. Specifically, the Plaintiff asserts (1) that the exclusive dealing arrangement was an unfair and oppressive trade practice (Count IV); (2) that the manner in which the Defendant terminated the contracts and the circumstances surrounding those terminations constituted unfair trade practices (Count V); and (3) that the Defendant tortiously interfered with the Plaintiff's business and its relationship with its BMS employees (Count VI). [Id. at 23-30]. Finally, the Plaintiff alleges that

the Defendant's conduct also constitutes negligent misrepresentation (Count VII) and fraud (Count VIII) under North Carolina law.  [Id. at 30-31].

On November 14, 2006, the Defendant filed a Motion to Dismiss [Doc. 18] Counts IV-VIII of the Plaintiff's Complaint [Doc. 2].  On January 10, 2007, the Magistrate Judge entered a Memorandum and Recommendation [Doc. 31], recommending that this Motion be granted. The Plaintiff now objects to portions of that recommendation.  [Objections, Doc. 35].

## II.   STANDARD OF REVIEW

A party may file written objections to a magistrate judge's memorandum and recommendation within ten days after being served with a copy of the recommended disposition.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  Such objections must be made "with sufficient specificity so as reasonably to alert the district court of the true ground for the objection." United States v. Midgette, 478 F.3d 616, 621 (4th Cir.), cert. denied, 127 S. Ct. 3032, 168 L. Ed. 2d 749 (2007).  The Court is not required to review, under a de novo or any other standard, the factual or legal conclusions of the magistrate judge to which no objections have been raised.  Thomas v. Arn, 474 U.S. 140, 150, 106 S. Ct. 466, 472, 88 L. Ed. 2d 435 (1985).

Additionally, the Court need not conduct a *de novo* review where a party makes only "general and conclusory objections that do not direct the court to a specific error in the magistrate's proposed findings and recommendations." Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982).

The Court has conducted a careful review of those portions of the Memorandum and Recommendation that were not the subject of a specific objection and concludes that the Magistrate Judge's conclusions are correct. Accordingly, these portions of the Memorandum and Recommendation are adopted and hereby incorporated in full. As to those portions of the Memorandum and Recommendation to which specific objections were filed, the Court will conduct a *de novo* review. See 28 U.S.C. § 636(b); Fed. R. Civ. P. 72.

## III.  ANALYSIS

The Plaintiff makes three primary objections to the Magistrate Judge's Memorandum and Recommendation. First, the Plaintiff argues that the Magistrate Judge applied an improper standard of review to the facts alleged in the Complaint. [Objections, Doc. 35 at 1-6]. Second, the Plaintiff objects to the Magistrate Judge's characterization of the Plaintiff's claims for relief. [Id. at 6-8]. Finally, the Plaintiff objects to the Magistrate

Judge's dismissal of the unfair business practices claims, arguing that the Magistrate improperly cited inapplicable and distinguishable case law and ignored the totality of the Defendant's conduct as alleged by the Plaintiff. [Id. at 8-21]. The Court will address each of these objections in turn.

### A. The Magistrate Judge's Application of the Standard of Review to the Facts Alleged in the Complaint

The Plaintiff's first objection relates to the Magistrate Judge's statement of the applicable standard of review and the application of that standard to the facts alleged in the Plaintiff's Complaint [Doc. 2].

In reviewing a Rule 12(b)(6) motion, "the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." Mylan Labs, Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993), cert. denied, 510 U.S. 1197, 114 S.Ct. 1307, 127 L.Ed.2d 658 (1994). The plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, __ U.S. __, 127 S.Ct. 1955, 1965, 167 L.Ed.2d 929 (2007). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Id. at 1969. A complaint will survive a Rule 12(b)(6) motion to dismiss if it sets forth

"enough facts to state a claim to relief that is plausible on its face." Id. at 1974.

The Plaintiff takes issue with the following statement by the Magistrate Judge: "In considering a Rule 12(b)(6) motion, the complaint must be construed in the light most favorable to the nonmoving party, assuming factual allegations to be true." [Memorandum and Recommendation, Doc. 31 at 6]. The Plaintiff argues that this statement is inaccurate because the Magistrate Judge failed to state in addition that all reasonable inferences derived from the allegations in the complaint must be drawn in the light most favorable to the plaintiff. [Objections, Doc. 35 at 1]. Upon careful review of the Magistrate Judge's Memorandum and Recommendation, the Court is satisfied that the Magistrate Judge did, in fact, draw all reasonable inferences in favor of the Plaintiff as the non-moving party, and thus complied with the appropriate standard of review in this case. While the Magistrate Judge may have, in a few instances, slightly mischaracterized the allegations in the interest of brevity, it is nonetheless clear that any such minor misstatements played no role in the recommendation. They certainly play no role in this decision. The Plaintiff's Objection on this point is without merit.

The Plaintiff goes on to contend that the Magistrate Judge ignored certain allegations in the Complaint and improperly included facts outside of the Complaint. [Objections, Doc. 35 at 2]. Specifically, the Plaintiff argues that the Magistrate Judge's statements regarding the relative size of Home Depot and Lowe's and characterizing Home Depot as Lowe's chief competitor are inaccurate and not based on any of the allegations stated in the Complaint; that the Magistrate Judge ignored the Plaintiff's allegations concerning the disparate size of the Plaintiff and Defendant; and that the Magistrate Judge incorrectly asserted that the Plaintiff agreed to the exclusive dealing clause in the parties' contract. [Id. at 2-6].

The Court has reviewed each of these factual statements by the Magistrate Judge and finds that they are inconsequential to the analysis of the Magistrate Judge and this Court. Even if these factual recitations were inaccurate, the Plaintiff provides no explanation as to why these purported factual errors should lead the Court to reject the Memorandum and Recommendation. None of these alleged factual errors cited by the Plaintiff affect or are in any way related to the rationale supporting the recommendation of dismissal of these claims, and the Plaintiff fails to explain how drawing a different inference from these allegations would

change or affect the outcome proposed by the Memorandum and Recommendation [Doc. 31].

Upon careful review of the Memorandum and Recommendation [Doc. 31], the Court is satisfied that the Magistrate Judge used the appropriate standard of review in analyzing the Defendant's Motion to Dismiss [Doc. 18]. The Magistrate Judge properly assumed the facts alleged in the Complaint as entirely true, disregarded those facts raised by the Defendant that were not alleged or otherwise raised in the Complaint. The Court therefore concludes that the Magistrate Judge utilized the appropriate standard of review in analyzing the Defendant's Motion to Dismiss, and the Plaintiff's first objection is therefore overruled.

## B. The Magistrate Judge's Characterization of the Plaintiff's Claims for Relief

The Plaintiff next objects to the Magistrate Judge's characterization of the Plaintiff's claims for relief. The Plaintiff argues that the Magistrate Judge incorrectly described the Complaint as one that arises from the termination of two written contracts and an alleged oral contract between the parties. The Plaintiff contends that this description is inaccurate because the Plaintiff has asserted causes of action in addition to claims for breach of contract, including claims of negligent misrepresentation, fraud,

and unfair trade practices in violation of N.C. Gen. Stat. § 75-1.1. Additionally, the Plaintiff argues that the Magistrate Judge inaccurately characterized the basis of the Plaintiff's breach of contract claims and misstated the termination provision of the parties' written contracts.

For the reasons stated in greater detail below, the Magistrate Judge's characterization of this action as one arising from the termination of the parties' contracts appears to be generally accurate. With respect to the Magistrate Judge's discussion of the Counts I, II, and III of the Complaint [Doc. 2], which set forth the Plaintiff's breach of contract claims, the Court notes that the Defendant did not seek to dismiss any of these claims in its motion to dismiss, and the Magistrate Judge made no recommendation with respect to these claims. Thus, to the extent that the Plaintiff's breach of contract claims are discussed in the Memorandum and Recommendation [Doc. 31], such discussion did not form a basis for the Magistrate Judge's recommendation that Counts IV through VIII of the Complaint be dismissed. Once again, Plaintiff objects to language in the Memorandum and Recommendation that does not appear to be of any consequence to the analysis employed by the Magistrate Judge or to the conclusion arrived upon therein. Accordingly, the Plaintiff's second

objection [Doc. 35] to the Memorandum and Recommendation [Doc. 31] is overruled.

## C. The Magistrate Judge's Dismissal of the Plaintiff's UDTPA Claims

Next, the Plaintiff argues that the Magistrate Judge erred in recommending the dismissal of the Plaintiff's UDTPA claims without evaluating the totality of the Defendant's conduct. [Objections, Doc. 35 at 8].

The North Carolina Unfair and Deceptive Trade Practices Act ("UDTPA" or "Act") provides that "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are declared unlawful." N.C. Gen. Stat. § 75-1.1(a). The Act "prohibits unfair and deceptive acts which undermine ethical standards and good faith dealings between parties engaged in business transactions." First Atl. Mgmt. Corp. v. Dunlea Realty Co., 131 N.C. App. 242, 252, 507 S.E.2d 56, 63 (1998). The UDTPA protects not only consumers, but businesses as well. Food Lion, Inc. v. Capital Cities/ABC, Inc., 951 F. Supp. 1224, 1231-32 (M.D.N.C. 1996); Jennings Glass Co. v. Brummer, 88 N.C. App. 44, 52, 362 S.E.2d 578, 583 (1987), review denied, 321 N.C. 473, 364 S.E.2d 921 (1988).

In order to prevail on a claim for unfair and deceptive trade practices under the UDPTA, a plaintiff must show the following: (1) that the defendant committed an unfair or deceptive act or practice; (2) that the act or practice was in or affecting commerce; and (3) that the plaintiff was injured thereby. First Atl. Mgm't Corp., 131 N.C. App. at 252, 507 S.E.2d at 63. Whether a certain act constitutes an unfair or deceptive trade practice is a question of law for the Court. Sara Lee Corp v. Quality Mfg., 201 F. Supp. 2d 608, 617 (M.D.N.C. 2002), aff'd, 61 Fed. App'x 836 (4th Cir. Mar. 27, 2003). The Fourth Circuit has noted that "[w]hat constitutes an unfair or deceptive trade practice is a somewhat nebulous concept," and that North Carolina courts determine what constitutes an unfair or deceptive trade practice based on the particular circumstances of each case. See Gilbane Bldg. Co. v Fed. Reserve Bank of Richmond, 80 F.3d 895, 902 (4th Cir. 1996). "Thus, whether a particular practice violates the [UDTPA] is both a question of law and a highly fact-specific inquiry." South Atl. Ltd. P'ship of Tenn., LP v. Riese, 284 F.3d 518, 535 (4th Cir. 2002).

A "deceptive trade practice" is one that "has the capacity or tendency to deceive." Phelps-Dickson Builders, LLC v. Amerimann Partners, 172 N.C. App. 427, 439, 617 S.E.2d 664, 671 (2005). To state a claim under

the UDTPA, proof of actual deception is not necessary; only the potential for deception is required. South Atl. Ltd. P'ship, 284 F.3d at 536. Either unfairness or deception can bring conduct within the purview of the statute; conduct does not have to be both unfair and deceptive. Id. at 535.

As a general rule, an "unfair trade practice" is a practice that is "immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers." Phelps-Dickson Builders, LLC v. Amerimann Partners, 172 N.C. App. at 439, 617 S.E.2d at 671. As the North Carolina Court of Appeals has observed, an "unfair practice" under the UDTPA is conduct

> which a court of equity would consider unfair. Thus viewed, the fairness or unfairness of particular conduct is not an abstraction to be derived by logic. Rather, the fair or unfair nature of particular conduct is to be judged by viewing it against the background of actual human experience and by determining its intended and actual effects upon others.

Harrington Mfg. Co. v. Powell Mfg. Co., 38 N.C. App. 393, 400, 248 S.E.2d 739, 744 (1978) (citation omitted), review denied, 296 N.C. 411, 251 S.E.2d 469 (1979). The North Carolina Supreme Court has recognized that an unfair act or practice is committed where the party "engages in conduct manifesting an inequitable assertion of power or position." Gray v. N.C. Ins. Underwriting Ass'n, 352 N.C. 61, 68, 529 S.E.2d 676, 681 (2000).

However, a mere breach of contract, without more, will not constitute an unfair or deceptive trade practice.  Horack v. Southern Real Estate Co. of Charlotte, Inc., 150 N.C. App. 305, 310, 563 S.E.2d 47, 51 (2002) (quoting Mosley & Mosley Builders v. Landin Ltd., 97 N.C. App. 511, 518, 389 S.E.2d 576, 580 (1990)).  Where a breach of contract is involved, "a plaintiff must show substantial aggravating circumstances attending the breach to recover under the Act . . . ."  Horack, 150 N.C. App. at 310-11, 563 S.E.2d at 51.

### 1.    Unfair Trade -- Exclusive Dealing Contracts

In Count IV of the Complaint, the Plaintiff alleges that the exclusive dealing arrangements imposed by the Defendant constituted "vertical restraints on trade" in violation of § 75-1.1.  [Complaint, Doc. 2 at ¶ 161]. In addition, the Plaintiff alleges that the agreements were imposed without consideration, were not necessary to protect the Defendant's proprietary information, and were "inequitable and oppressive."  [Id. at ¶ 166].

The Magistrate Judge recommended dismissal of Count IV, reasoning that an exclusive dealing arrangement which does not otherwise violate federal antitrust laws necessarily does not violate the UDTPA. [Memorandum and Recommendation, Doc. 31 at 7-9].  The Magistrate

Judge further rejected the Plaintiff's contention that the exclusive dealing clauses constituted unfair trade practices merely because they were forced upon the Plaintiff. [Id.].

The Plaintiff objects to the Magistrate Judge's characterization of Count IV as one challenging the anti-competitive nature of the exclusive dealing clauses. Indeed, the Plaintiff does not claim that the subject exclusive dealing clauses violate federal anti-trust laws. [Plaintiff's Response to Motion to Dismiss, Doc. 27 at 2]. Rather, the Plaintiff argues that it is challenging such clauses as an unfair or deceptive practice under North Carolina law. [Plaintiff's Objections, Doc. 35 at 18].

To the extent that the Plaintiff's Complaint attempts to state a claim that the exclusive dealing clauses contained in the parties' contracts are anti-competitive, the Magistrate Judge was correct in holding that, absent allegations that the exclusive dealing arrangement had an adverse effect on competition in the marketplace, the Plaintiff's UDTPA claim must fail. See Stearns v. Genrad, Inc., 564 F. Supp. 1309, 1318 (M.D.N.C. 1983) (dismissing UDTPA claim where plaintiff failed to show that the challenged exclusive dealing agreement had "any effect upon overall competition in any relevant market"), aff'd, 752 F.2d 942 (4th Cir. 1984).

The thrust of Plaintiff's allegations is that the exclusive dealing contracts violate § 75-1.1 [Complaint, Doc. 2 at ¶ 176], and that Plaintiff was harmed by its entry into these offending agreements, [id. at ¶ 178]. The Plaintiff, however, can only complain regarding its entry into these agreements to the extent such entry was the act of the Defendant. Plaintiff makes no allegation that it was deceived into entering these contracts, deeming its acquiescence as a "concession" [id. at ¶ 49] to the Defendant. The gravamen of the Plaintiff's allegation is that the Defendant forced these exclusive dealing provisions on the Plaintiff through coercion or duress and through the use of the Defendant's unequal bargaining power. The factual allegations stated in the Plaintiff's Complaint, however, do not rise to the level of duress of coercion. "[A]n essential element of duress or coercion is a *wrongful* act or threat." Wilder v. Squares, 68 N.C. App. 310, 315, 315 S.E.2d 63, 66 (1984) (quoting Link v. Link, 278 N.C. 181, 194, 179 S.E.2d 697, 705 (1971)), review denied, 311 N.C. 769, 321 S.E.2d 158 (1984). Duress or coercion may also occur where one party "*unlawfully* induc[es] one to make a contract or to perform some other act against his own free will. It may be manifested by threats . . . ." Wilder, 68 N.C. App. at 316, 315 S.E.2d at 67 (quoting Fletcher v. Fletcher, 23 N.C. App. 207,

210, 208 S.E.2d 524, 527 (1974)).  In the present case, taking all of the

Plaintiff's allegations as true, the exclusive dealing agreements imposed on

the Plaintiff were not unlawful, as they did not constitute unlawful anti-

competitive measures for the reasons discussed *supra*.  Nor has the

Plaintiff made any allegation that the Defendant made any wrongful threat

to induce the Plaintiff to enter into these agreements.  Moreover, the fact

that the Defendant may have used its unequal bargaining position to force

the Plaintiff to accept the clauses does not constitute an unfair act or

practice under the UDTPA.  See Sara Lee Corp. v. Quality Mfg., Inc., 201

F. Supp. 2d at 617 (finding no "substantial aggravating circumstances"

where plaintiff alleged defendant had "superior position" and "dictat[ed]

terms" of contract to plaintiff).  Thus, to the extent that Count IV of the

Complaint asserts that imposition of the exclusive dealing agreements was

an unfair trade practice under the UDTPA, the Magistrate Judge was

correct in concluding that Count IV fails to state a claim upon which relief

can be granted.[1]

----

[1]Plaintiff also objected to the Memorandum and Recommendation on the grounds that the Magistrate Judge relied on the case of Chuck's Feed & Seed Co. v. Ralston Purina Co., 810 F.2d 1289 (4th Cir. 1987), to recommend dismissal of the UDTPA claims because that case applied South Carolina's deceptive trade practice statute rather than the one at issue here.  Because the Court reaches this conclusion without relying upon the Chuck's Feed decision, the Court need not address the

## 2. Unfair Trade -- In Connection With Breach of Contracts

In Count V the Plaintiff asserts a claim for unfair and deceptive trade practices based on the actions taken by the Defendant surrounding and including the termination and alleged breach of the services agreements. The Magistrate Judge treated this Count in two short paragraphs in the Memorandum and Recommendation, addressing it as solely a claim for "commercial bribery." [Doc.31 at 9]. Plaintiff objects at length, arguing that this Count entails much more than the commercial bribery allegations. [Doc.35 at 10-17].

Plaintiff correctly states that a breach of contract, standing alone, is insufficient to state a claim for an unfair or deceptive trade practice, but that N.C. Gen. Stat. §75-1.1 is violated if such breach is accompanied by "substantial aggravating circumstances," citing <u>Branch Banking & Trust Co. v. Thompson</u>, 107 N.C. App. 53, 61, 418 S.E.2d 694, 700 (1992). Plaintiff argues, however, that it has alleged a collection of such aggravating circumstances that are not limited to commercial bribery.

---

Plaintiff's argument that such decision is factually and legally distinguishable from the present case.

Though a determination of what constitutes an unfair or deceptive trade practice is a question of law, such determination necessarily involves a very detailed factual inquiry that is specific to the case at hand. South Atl. Ltd. P'ship of Tenn., LP v. Riese, 284 F.3d 518, 535 (4th Cir. 2002). It is, therefore, a difficult proposition to undertake such a fact-specific inquiry in the context of a Rule 12(b)(6) motion, where the Court is addressing mere allegations rather than the facts about which evidence has been presented. Taking the allegations as true, and allowing the Plaintiff the benefit of all reasonable and plausible inferences from those allegations, Plaintiff has alleged substantial aggravating circumstances surrounding the alleged breach and wrongful termination of the contracts.

Plaintiff has alleged that at the time of the termination of the first contract that Defendant advised Plaintiff that this was a "realigning" and that "Lowe's had already decided VSA's growth area would be fashion products." [Complaint, Doc. 2 at ¶ 73]. Plaintiff alleges several other statements by Defendant's employees that raise a plausible inference that the income from the terminated contracts would be replaced or substantially replaced through new contracts, thus inducing Plaintiff to cooperate in the transition of the BMS and other lines, ultimately to

Plaintiff's detriment. [Id. at ¶¶ 73-75, 195]. These statements would appear to rise to the level of promissory misrepresentations, which can form the basis of a claim under N.C. Gen. Stat. §75-1.1. See Process Components, Inc. v. Baltimore Aircoil Co. Inc., 89 N.C. App. 649, 366 S.E.2d 907 (1988). In addition, Plaintiff makes some allegations, albeit rather vaguely, that Lowe's "had already decided" and "had determined" to direct the fashion products business to Plaintiff, [id. at ¶¶ 73, 75], and that these representations were false when made, [id. at ¶ 76]. This raises a plausible inference that Defendant represented that it harbored a specific intent regarding the fashion products contract when in fact it had no such intent to act, which could also give rise to a cognizable claim under §75-1.1. See Custom Molders, Inc. v. Roper Corp., 101 N.C. App. 606, 614, 401 S.E.2d 96, 100, aff'd per curiam, 330 N.C. 191, 410 S.E.2d 55 (1991).

These allegations also need to be taken in the context of the overall transaction between the parties. Plaintiff alleges at length the circumstance which it contends constitutes commercial bribery on the part of one of Defendant's employees, and how those actions allegedly violate Defendant's own code of ethics. [Id. at ¶¶ 181-91]. The only attempt that Plaintiff makes to attribute such acts to the Defendant, however, are very

vague allegations of ratification found in paragraphs 184 and 185. If standing alone, these allegations would probably stretch the limits of Twombley, but when taken *in pari materia* with Plaintiff's other allegations of deceitful, unethical or oppressive conduct, may form the basis of claim under §75-1.1, particularly in the context of Defendant having Plaintiff in the vulnerable position of being unable to solicit business from any competitor of Lowe's. It must be noted, however, that taking the Plaintiff's allegations as true and giving the Plaintiff the benefit of all reasonable and plausible inference is a difficult proposition because of the apparent contradictions in Plaintiff's positions. For instance, Plaintiff alleges that it was harmed by being required to enter into the exclusively contracts [id. at ¶¶ 176,178], but also alleges that it was harmed by Defendant's unlawful termination of those same contracts. [Id. at ¶¶118-19, 147-48]. Plaintiff also argues that the exclusive dealing contracts are unenforceable [Doc.35 at 10], but then asserts that it was harmed by virtue of having been bound by the exclusive dealing provisions. [Id.]. Treating these as pleadings in the alternative, and allowing the Plaintiff the benefit of the scenario of inferences most advantageous to it dictates that Count V should not be dismissed at the pleading stage. For this reason, the Objections to the

Memorandum and Recommendation concerning Count V will be sustained, and the Recommendation as to that Count will be rejected.

Having concluded that the Plaintiff's allegations of misrepresentations are sufficient to survive dismissal at the pleading stage regarding the claim for unfair or deceptive trade practices, the Plaintiff's allegations of misrepresentations supporting claims for negligent misrepresentation and fraud should also survive. The standard for pleading fraud, however, is a fairly high standard, see Fed. R. Civ. P. Rule 9(b), and unlike §75-1.1, a mere promissory representation is insufficient. See Forstmann v. Culp, 648 F.Supp. 1379, 1387 (M.D.N.C. 1986) ("The general rule is that a plaintiff cannot predicate an action for fraud upon statements which are promissory in nature at the time they are made and which relate to future actions and conduct."). As such, Plaintiff's fraud claim hangs by the thread of the two specific allegations of a representation of a subsisting fact, namely that Defendant represented that it "had already decided" and "had determined" to direct the fashion products business to Plaintiff. [Id. at ¶¶ 73, 75]. Whether this claim can survive summary judgment is for consideration on another day, but at this stage the claim will not be dismissed.

The Magistrate Judge recommended the dismissal of Count VI alleging interference with contract and another claim for violation of the UDTPA based thereon. Plaintiff has filed no objection to the recommendation as it pertains to Count VI. After review of the relevant pleadings the Court determines that the recommendation of the Magistrate Judge is correct as to that Count. Count VI will, therefore, be dismissed.

## IV.    CONCLUSION

Upon conducting a *de novo* review of the Magistrate Judge's Memorandum and Recommendation [Doc. 31], the Plaintiff's Objections [Doc. 35], and all other relevant pleadings, and viewing the allegations set forth in the Complaint [Doc. 2] in the light most favorable to the Plaintiff, the Court adopts the factual findings and legal conclusions of the Magistrate Judge's Memorandum and Recommendation [Doc. 31] as to Counts IV and VI and concludes for those reasons, as well as the reasons set forth herein, that the Plaintiff's claims for relief as set forth in Counts IV and VI in the Complaint [Doc. 2] must be dismissed as a matter of law.

The Court concludes, however, that as to Counts V, VII, and VIII, the Objections to the Memorandum and Recommendation should be sustained

and that the Motion to Dismiss as to Counts V, VII, and VII should be denied.

Accordingly, **IT IS, THEREFORE, ORDERED** that the Magistrate Judge's Memorandum and Recommendation [Doc. 31] filed January 10, 2007 is hereby **ADOPTED IN PART** and **REJECTED IN PART**, and the Plaintiff's Objections to the Magistrate Judge's Memorandum and Recommendation [Doc. 35] are **SUSTAINED IN PART** and **OVERRULED IN PART**.

**IT IS FURTHER ORDERED** that the Defendant's Motion to Dismiss [Doc. 18] is **GRANTED** as to Counts IV and VI of the Plaintiff's Complaint, and said Counts are **DISMISSED WITH PREJUDICE**.  Except as so granted, the Defendant's Motion to Dismiss [Doc. 18] is **DENIED**.

**IT IS SO ORDERED.**

Signed: April 11, 2008

Martin Reidinger
United States District Judge